

FILED
MAY 2 0 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY            DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTY ANN KREISCHER,<br><br>                         Plaintiff,<br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>                        Defendant. | Case No.: 3:18-cv-01034-W (RNB)<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(ECF Nos. 14, 18)** |

      This Report and Recommendation is submitted to the Honorable Thomas J. Whelan, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

      On May 24, 2018, plaintiff Kristy Ann Kreischer filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits and supplemental security income ("SSI"). (ECF No. 1.)

      Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the

decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND

On June 11, 2014, plaintiff protectively filed an application for a period of disability and disability insurance benefits along with an application for SSI, under Titles II and XVI of the Social Security Act, respectively. Both applications alleged disability beginning January 1, 2008. (Certified Administrative Record ["AR"] 245-48, 249-54.) After her claims were denied initially and upon reconsideration (AR 177-82, 185-91), plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 192.) An administrative hearing was held on November 10, 2016. Plaintiff appeared at the hearing with counsel, and testimony was taken from her, a medical expert ("ME"), and a vocational expert ("VE"). (AR 77-120.)

As reflected in his January 31, 2017 hearing decision, the ALJ found that plaintiff had not been under a disability, as defined in the Social Security Act, from January 1, 2008 through the date of the decision. (AR 53-65.) The ALJ's decision became the final decision of the Commissioner on April 10, 2018, when the Appeals Council denied plaintiff's request for review. (AR 18-20.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ calculated that plaintiff met the special earnings requirements for a period of disability and disability insurance benefits through December 31, 2010. (AR 55.) The ALJ thereafter followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2008, her alleged onset date. (AR 55.)

At step two, the ALJ found that plaintiff had the following severe impairments:

"subcondular fracture of left femur, status-post open reduction and internal fixation, but with no usual scars of an ACL repair, flexion contracture, left knee; degenerative joint disease, mild, left knee; right knee internal derangement, status-post right knee open medial surgery; chronic lumbar strain and sprain with history of lumbar fracture without deformity; degenerative disc disease, mild to moderate, C5-6 and C6-7, of cervical spine, without neurological deficits; and history of coronary artery disease with stent." (AR 55-56.)

The ALJ further found that "[plaintiff's] medically determinable mental impairment of affective disorder does not cause more than minimal limitation in [plaintiff's] ability to perform basic mental work activities and is therefore nonsevere." (AR 56.)

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 57.)

Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a range of light work, including lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; push and pull equal to the lift and carry limitations; and climb ramps and stairs, stoop, kneel, and crouch occasionally. The ALJ also determined that plaintiff could never climb ladders or scaffolds, or work around unprotected heights or dangerous machinery. The ALJ also determined that plaintiff had no manipulative limitations and did not need a cane to ambulate. (AR 57.)

At step four, the ALJ found that plaintiff was capable of performing her past relevant work as an automotive contract clerk, as generally performed in the national economy. (AR 65.)[1]

---

[1] The ALJ's step four finding comported with the administrative hearing testimony of the VE. (*See* AR 112-17.)

3

Based on his determination that plaintiff could return to her past relevant work, the ALJ concluded that plaintiff was not disabled for purposes of either of her benefits applications. (AR 65.)

**DISPUTED ISSUES**

As reflected in plaintiff's motion for summary judgment, the disputed issues that plaintiff is raising as the grounds for reversal and remand are as follows:

1) Whether the ALJ erred in failing to include the mild mental limitations he found plaintiff to possess in the hypothetical to the VE;

2) Whether the ALJ's determination that plaintiff did not suffer from a severe mental impairment was supported by substantial evidence;

3) Whether new and material evidence submitted to the Appeals Council warranted remand; and

4) Whether the ALJ properly rejected plaintiff's subjective testimony regarding the severity of her physical impairments.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the

Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

### A. The Court is unable to affirm the ALJ's step two finding that plaintiff did not suffer from a severe mental impairment.

Step two of the Commissioner's sequential evaluation process requires the ALJ to determine whether an impairment is severe or not severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the Commissioner's regulations, an impairment is not severe if it does not **significantly** limit the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c) (emphasis added). Basic work activities are "abilities and aptitudes necessary to do most jobs," including mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *See* Social Security Ruling ("SSR") 85-28.[2] The Ninth Circuit has described step two as "a de minimis screening device to dispose of groundless claims." *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

To determine whether a claimant has a severe *mental* impairment at step two, an ALJ must follow a "special technique." *See* 20 C.F.R. §§ 404.1520a(a), 416.920a(a).[3] This

---

[2] Social Security Rulings are binding on ALJs. *See Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

[3] The Court notes that the Social Security Agency revised the medical criteria used to evaluate claims involving mental disorders in a revised version of 20 C.F.R. §§ 404.1520a and 416.920a effective January 17, 2017. The revised version applies to ALJ decisions

entails the following steps: determining whether the claimant has any medically determinable mental impairments; rating the degree of functional limitation resulting from the mental impairment(s) in four broad functional areas; determining the severity of the mental impairment(s); and then, if any of the mental impairments is severe, proceeding to step three of the sequential evaluation process. *See* 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d).

Pursuant to the Commissioner's regulations in effect at the time of the ALJ's decision here, the four broad functional areas are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). In rating the degree of limitation in these areas, the following five-point scale is utilized: None, mild, moderate, marked, and extreme. *See* 20 C.F.R. §§ 404.1520a(c)(4) 416.920a(c)(4). Under the Commissioner's regulations, if the degrees of limitation are rated as "none" or "mild," the impairment generally is considered not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Here, the ALJ's decision reflects that he followed the "special technique." He acknowledged that plaintiff had a medically determinable mental impairment of affective disorder. However, he proceeded to find that plaintiff had only a mild degree of limitation in each of the four broad functional areas. Accordingly, the ALJ found that "[plaintiff's] medically determinable mental impairment of affective disorder does not cause more than minimal limitation in [plaintiff's] ability to perform basic mental work activities and is therefore nonsevere." (AR 56.)

---

issued after that date. *See* 81 Fed. Reg. 66138-01, at 66138 n.1 (Sept. 26, 2016). Since the ALJ decision here was issued on January 31, 2017, all references herein to 20 C.F.R. §§ 404.1520a and 416.920a will refer to the revised version.

6

The medical evidence of record included a mental impairment questionnaire dated August 13, 2014 that had been provided by Dr. Kristy Lamb, who reported treating plaintiff since the previous November. (AR 583.) Dr. Lamb opined *inter alia* that, as a result of plaintiff's depressive disorder, plaintiff was unable to meet competitive standards with respect to numerous attributes of unskilled, semiskilled, and skilled work; that plaintiff was seriously limited in the ability to maintain socially appropriate behavior; and that plaintiff had marked to extreme limitations with respect to several areas of functioning, including activities of daily living, social functioning, and maintaining concentration, persistence or pace. (AR 585-87.) Dr. Lamb further opined that plaintiff's impairments would require her to be absent from work more than four days per month and were expected to last at least twelve months. (AR 588.)

Since the ALJ's non-severity finding with respect to plaintiff's medically determinable mental impairment cannot be reconciled with the aforementioned opinions of Dr. Lamb, in order to be able to affirm the ALJ's non-severity finding, the Court must be able to affirm his rejection of Dr. Lamb's opinions.

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the claimant, (2) those who examined but did not treat the claimant, and (3) those who did neither. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's opinion. *Id.*

This is so because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. *Smolen*, 80 F.3d at 1285. Under the regulations governing claims such as plaintiff's filed before March 27, 2017, if a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(3). If a treating physician's opinion is not given controlling weight, its weight

7

is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors. *See* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The law is well established in this Circuit that, if the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *See Lester*, 81 F.3d at 830; *Baxter v. Sullivan*, 923 F.3d 1391, 1396 (9th Cir. 1991). Where, as here, a treating physician's opinion is controverted,[4] it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *See, e.g., Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

Here, the ALJ stated the following with respect to Dr. Lamb's opinions regarding the severity of plaintiff's mental health impairment:

> "The undersigned has read and gives less weight to the mental impairment questionnaire, dated August 13, 2014, by Kristy Lamb, who asserted the claimant had marked to extreme mental limitations in several areas of functioning, due to severe depressive disorder and a GAF score of 35-40 (6F, pp. 1-6). However, the objective treatment records do not substantiate the assertion by Ms. Lamb. In fact, the claimant had complained of depression, but she had an intact mental status exam upon consultative exam; and the claimant was noted to be able to conduct daily chores, dress and bathe herself, live alone, drive a car, cook, and run errands (1F, p. 5; See Testimony). Moreover, the professional credentials of Ms. Lamb are not

---

[4] Dr. Lamb's opinions were controverted by the opinions of two consultative examiners, Dr. Romualdo Rodriguez (who opined in his November 8, 2008 evaluation report that plaintiff had no more than slight mental limitations in all areas of functioning) and Dr. Gregory Nicholson (who opined in his September 17, 2014 examination report that plaintiff had only mild mental functional limitations). (*See* AR 328-37, 589-97.)

8

indicated in the questionnaire, and it is unknown as to whether Ms. Lamb is a psychiatrist or psychologist, or other acceptable medical source (6F)." (AR 64.)

Preliminarily, the Court will address the ALJ's rejection of Dr. Lamb's opinions because her credentials were not indicated in the questionnaire. The administrative record was replete with evidence that Dr. Lamb was a medical doctor to whom plaintiff had been referred specifically for mental health treatment and by whom plaintiff had regularly been treated. (*See, e.g.,* AR 468-70, 497-99, 501, 502, 505-06, 507-08, 510, 512-15, 519-23.) Moreover, given the medical records documenting plaintiff's visits with Dr. Lamb, the only reasonable inference to be drawn from plaintiff's administrative hearing testimony that she had been going to a female doctor for refills of her anxiety medication (*see* AR 118-19) was that plaintiff had been referring to Dr. Lamb. The Court therefore finds that this purported reason for rejecting Dr. Lamb's opinions was not a legitimate reason based on the substantial evidence of record.

Another reason proffered by the ALJ for rejecting Dr. Lamb's opinions was that her opinions were not substantiated by "the objective treatment records." However, the ALJ did not specify the evidence from plaintiff's treatment records that supposedly undermined Dr. Lamb's opinions. Accordingly, the Court finds that this vague reason is not sufficiently specific to constitute a legally sufficient reason for rejecting Dr. Lamb's opinions. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required."); *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (same); *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) ("[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion."). Moreover, the treatment records referenced by the ALJ consist of hundreds of pages of documents and it is not the Court's function to comb the record to find specific conflicts

when the ALJ makes this kind of general statement. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

The ALJ's other stated reason for rejecting Dr. Lamb's opinions was that they were contradicted by the intact mental status findings on a consultative examination conducted almost six years earlier, and supposedly inconsistent with the daily activities related by plaintiff to the consultative examiner. However, any inconsistency between Dr. Lamb's opinions and the findings of the consultative examiner merely was determinative of the standard to be applied to the ALJ's proffered reasons for not crediting Dr. Lamb's opinions; it was not a legally sufficient reason in itself for not crediting Dr. Lamb's opinions. *See Lester*, 81 F.3d at 830 (in the event of conflict in the medical opinion evidence, an ALJ still must provide legally sufficient reasons to reject a treating or examining physician's opinion); *see also Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006) (existence of a conflict among the medical opinions by itself cannot constitute substantial evidence for rejecting a treating physician's opinion). As for the daily activities noted by the consultative examiner, the ALJ failed to explain how the daily activities performed by plaintiff in 2008 were inconsistent with Dr. Lamb's opinions rendered in 2014. Nor did the ALJ explain how the daily activities about which plaintiff testified at the administrative hearing were inconsistent with Dr. Lamb's opinions. The Court also notes that, contrary to the ALJ's characterization, plaintiff did not report to the consultative examiner that she was living alone. Rather, she reported that she was living with family. (*See* AR 332.) Further, the administrative record reflects that plaintiff later became homeless for a period of time and eventually stayed at the YWCA, where she participated in a transition program providing a safe and supportive environment for single homeless women. (*See, e.g.*, AR 316, 431, 453, 476, 481-83.) The Court therefore finds that the ALJ's other stated reason for rejecting Dr. Lamb's opinions also was not a legally sufficient reason for rejecting those opinions.

Because the ALJ failed to state a single legally sufficient reason for rejecting Dr. Lamb's opinions, the Court is unable to affirm his step two finding that plaintiff did not

10

3:18-cv-01034-W (RNB)

suffer from a severe mental impairment. It follows that there is no need for the Court to even reach the issue of whether the ALJ should have included the mild mental limitations he found plaintiff to possess in the hypothetical to the VE. Moreover, since the ALJ's step two error requires that the case be remanded for further administrative proceedings, the issue of whether the new evidence submitted by plaintiff to the Appeals Council warranted remand now is moot. On remand, the ALJ will be required to consider the July 17, 2014 Physical Residual Functional Capacity Questionnaire provided by plaintiff's treating nurse practitioner (*see* AR 73-76) under the appropriate legal standard.[5]

However, in the Court's view, the ALJ's step two error with respect to plaintiff's mental impairment does not render moot the issue of whether the ALJ properly rejected plaintiff's subjective testimony regarding the severity of her physical impairments. The Court therefore will now turn to that issue.

**B. Reversal is not warranted based on the ALJ's alleged failure to properly reject plaintiff's subjective testimony regarding the severity of her physical impairments.**

In a disability report from October 2014 (AR 284-90), plaintiff asserted *inter alia* that she had difficulty breathing; that she had constant severe aching pain; that she had difficulty standing, walking, and sitting; and that she had difficulty lifting due to pain and weakness caused by bilateral carpal tunnel syndrome. She also asserted that she had

---

[5] At the time plaintiff's benefits applications were filed in 2014, the opinions of nurse practitioners as treating sources were not given the same weight as physicians' opinions. Under the versions of 20 C.F.R. §§ 404.1513 and 416.913 in effect prior to March 27, 2017, nurse practitioners were not included in the Social Security Administration's definition of "acceptable medical sources," but rather were deemed "other sources." Their opinions must still be evaluated. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f). However, the ALJ may "discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)).

11

difficulty washing her hair when taking a shower due to limited mobility in both hands; that she had difficulty putting on clothes and shoes; that she had difficulty fixing meals and washing dishes, and difficulty holding onto things with her weak hands.

In a disability report from February 2015 (AR 293-98), plaintiff reiterated that she had constant severe aching pain in both hands, which caused her difficulty dressing and rendered her unable to wash dishes anymore. She also asserted *inter alia* that she constantly felt that her head was getting numb and she was going to pass out; that she had severe pain in both knees; that her insomnia was getting worse and that she continued to have a severe sleeping problem even with medication; that she had heart problems that continued to cause her shortness of breath, fast palpations, and sweating; and that she had difficulty when taking a shower or going to the bathroom.

At the administrative hearing held on November 10, 2016, plaintiff testified that, for over a 3-year period (from February 2013 until two weeks prior to the hearing), she had helped care for her significant other's dying mother; and that this care consisted of making meals, washing clothes, and helping the mother in the bathroom. (AR 86-89.) Plaintiff further testified that she was able to make meals for herself; that she was able to dress herself; that she drove occasionally, including to doctor's appointments and the market; that she was able to do her own laundry, although she could not fold towels because of the pain in her wrists; and that, for the same reason, she could only do limited housework. (*See* AR 89-101.) When asked for the reason she couldn't return to her past work as an office clerk, plaintiff cited the pain in her wrists that would prevent her from filing and the pain in her back when she stood up. (*See* AR 94-95.)

It is well established in this Circuit that, if the claimant has produced objective medical evidence of an impairment or impairments that could reasonably be expected to produce some degree of pain and/or other symptoms and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. *See Smolen*, 80 F.3d at

1281-82; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986).

Here, after summarizing plaintiff's assertions in the disability reports and her administrative hearing testimony regarding her ability to perform daily activities (*see* AR 58), the ALJ stated:

> "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (AR 59.)

As best the Court can glean from the ALJ's decision, one reason for his adverse credibility determination was the inconsistency perceived by the ALJ between plaintiff's assertions regarding the severity of her physical impairments in the disability reports, on the one hand, and her administrative hearing testimony regarding her ability to perform daily activities, on the other hand. (*See* AR 58.) The Ninth Circuit has noted that there are "two grounds for using daily activities to form the basis of an adverse credibility determination": Evidence of the daily activities either (1) contradicts the claimant's other testimony, or (2) meets the threshold for transferable work skills. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the Court concurs with the ALJ that plaintiff's administrative hearing testimony regarding her daily activities contradicted the assertions of disabling physical impairments in plaintiff's disability reports. Put another way, at the administrative hearing, plaintiff did not purport to be as seriously impaired physically as she had purported to be in the disability reports. The Court therefore finds that this reason constituted a legally sufficient reason for not crediting the assertions by plaintiff regarding the severity of her physical impairments in the disability reports.

Another reason cited by the ALJ in support of his adverse credibility determination was that plaintiff's allegations regarding the severity of her symptoms and limitations were greater than expected in light of the objective evidence of record. (*See* AR 61.) The Court notes that, at the outset of the administrative hearing, plaintiff's counsel acknowledged that plaintiff did not have a treating source opinion regarding her physical impairments from anyone. (*See* AR 80.) However, as discussed by the ALJ in his decision, the medical evidence of record did include the findings and opinions of four physicians. Dr. Sabourin, an orthopedic consultative examiner, had found minimal abnormalities when he conducted a physical examination of plaintiff; and he had opined that she could perform a range of light work. (*See* AR 61-62, 602-05.) The ME had testified after reviewing plaintiff's medical records that she had "very little orthopedic pathology at this time"; that there was no reason for plaintiff to be experiencing decreased sensation in her wrists after the bilateral carpal tunnel releases; that he concurred with Dr. Sabourin's assessment of plaintiff's physical residual functional capacity; and that any post-operative pain experienced by plaintiff would go away as the ligament reconstituted itself. (*See* AR 62-63, 102-04, 107-08.) Two State agency physicians who reviewed the record also had opined that plaintiff could perform a range of light work activity. (AR 63, 142, 169-70.)

While the Ninth Circuit has held that "a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain," *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), here the ALJ was not basing his adverse credibility determination solely on the lack of objective support. The Court therefore finds that the lack of objective support did constitute a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly consider conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support for the claimant's subjective

complaints); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on lack of objective evidence to support claimant's subjective complaints).

The Commissioner further contends that, in support of his adverse credibility determination, the ALJ also properly considered the fact that plaintiff had successfully completed the YWCA Passages Program. (*See* ECF No. 18-1 at 10, citing AR 59.) The Court does not agree that it was reasonable to infer from Ms. Ocampo's "to whom it may concern" letter (AR 316) that plaintiff had the physical capacity for gainful work. However, even if the ALJ erred in relying on Ms. Ocampo's letter in support of his adverse credibility determination, the error was harmless because the ALJ's other two reasons and ultimate adverse credibility determination were supported by substantial evidence. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding that ALJ's reliance on two invalid reasons in support of adverse credibility determination was harmless where remaining reasons were adequately supported by substantial evidence).

## CONCLUSION AND RECOMMENDATION

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See, e.g., Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision. *See, e.g., Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

Here, the Court has concluded that this is not an instance where no useful purpose would be served by further administrative proceedings; rather, additional administrative proceedings still could remedy the defects in the ALJ's decision. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (remanding for further administrative proceedings where ALJ failed to properly reject a treating physician's opinion).

The Court therefore **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED,** and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections within 14 days after being served with a copy of the objections. *See id.*

IT IS SO ORDERED.

Dated: May 20, 2019

ROBERT N. BLOCK
United States Magistrate Judge